FILED
CLERK

4:19 pm, Aug 27, 2020

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DAVID MICHAEL TROTMAN, JR.,

                      Plaintiff,

      -against-

JOHN DOE, Southampton Town Police Detective;
STEVEN KESSNER, ESQ., Legal Aid;
CHRISTOPHER GIOE, ESQ., ATB; PROSECUTORS,
Handling Plaintiff's Case; ALLEN RILEY, Chairman
NYS Commission on Corrections;
THOMAS LOUGHREN, Commissioner of NYS
Commission of Corrections; ANTHONY ANNUCCI,
Commissioner of Corrections and Community Supervision;
ERROL TOULON, JR., Current Sheriff of SCCF;
VINCENT DeMARCO, Former Sheriff of SCFF;
NUMEROUS SECURITY WORKERS INSIDE SCCF;
MEDICAL/MENTAL HEALTH STAFF INSIDE SCCF;
DR. TROIANO, SCCF; SGT. DIXON, SCCF;
NUMEROUS SUPERVISORS INSIDE SCCF;
INTERNAL AFFAIRS INVESTIGATORS THAT
HANDLE MATTERS INSIDE SCCF,

                      Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**
CV 18-7469 (GRB)(LB)

**GARY R. BROWN, United States District Judge:**

*Pro se* plaintiff David Michael Trotman, Jr., currently incarcerated at Sullivan Correctional Facility of Fallsburg, New York, filed an amended complaint describing a series of events relating to his arrest and subsequent incarceration at the Suffolk County Correctional Facility ("SCCF"). Pursuant to 28 U.S.C. § 1915(e)(2), the Court dismisses several of plaintiff's claims for the reasons set forth below.

## BACKGROUND

*Pro se* plaintiff commenced this action by filing a complaint and an *in forma pauperis*

1

application on December 21, 2018.  Compl. DE 1; IFP Application, DE 2.  The Clerk of the Court notified plaintiff of a deficiency with the *in forma pauperis* application on January 4, 2019.  DE 3.  Plaintiff renewed his *in forma pauperis* application on January 17, 2019.  DE 7.  Plaintiff filed an amended complaint on July 3, 2019.  Am. Compl., DE 11.  On January 23, 2020, Judge Matsumoto granted plaintiff's *in forma pauperis* application, but also ordered that a summons will not issue pending the Court's review of the amended complaint pursuant to § 1915.  Order dated Jan. 23, 2020.  The case was then randomly reassigned to the undersigned.

The amended complaint arises from a interview of the plaintiff on August 2017 by a detective identified as "John Doe Detective" ("Doe"), the conditions of confinement of plaintiff's first period of incarceration at SCCF from October 11, 2017 to December 8, 2017, the conduct of the defense attorneys and prosecutors in his underlying criminal case, and the conditions of confinement from plaintiff's second period of incarceration in SCCF from December 15, 2017 to November 1, 2018.  *See generally* Am. Compl., DE 11.[1]

1. August 2017

In August 2017, while plaintiff was hospitalized at Stony Brook Hospital, he was interviewed by defendant Detective John Doe employed by the Southampton Police Department.  *Id.* at 6.  Plaintiff declined to give a statement to defendant Doe because he was "incapacitated and could not remember due to poly-substance dependence disorder . . . ."  *Id.*

---

[1] Plaintiff's complaint contains a number of pages of drawings and lyrics, which are not relevant for purposes of this Memorandum and Order.  *See, e.g.*, Compl. 2, 4, 12.  These pages are intermixed with the substantive allegations of Plaintiff's complaint, meaning that they cannot be easily separated or stricken from the complaint without confusing its pagination.  The Court therefore cites to the complaint by the ECF page number.  Plaintiff also attached part of his medical records in the amended complaint ending with a page with text, "Illest Alive."  *Id.* at 22.

2. First Period of Incarceration from October 11, 2017 to December 8, 2017

Plaintiff was first incarcerated at SCCF from October 11, 2017 to December 8, 2017. *Id.* at 8. Plaintiff alleges that on October 11, 2017, defendant "Dr. Troiano stole/misplaced Stony Brook medical records for a femur fracture." *Id.* Plaintiff also alleges that upon arrival at SCCF, "racial profiling homosexual corrections officers called [him] 'broken arrow' . . . ." *Id.*

At SCCF, "[t]he plaintiff drew a great deal of attention to himself by calling openly gay and 'closet homosexuals' mooks & bozos out loud and directly to their faces. Referring to inmates housed on 3 East South." *Id.* However, "[t]he plaintiff always addressed John Doe Officers in a respectful manner." Plaintiff contends that that "calling people 'pink poodles' or other things without using any profane language isnt [sic] reason for the plaintiff to forfiet [sic] or to excuse any named defendant in this civil complaint." *Id.*

Plaintiff challenges the conduct of several defendant John Doe corrections officers, who he claims are "racist homosexuals." *Id.* at 8-9. Several days before October 24, 2017, plaintiff alleges a John Doe officer stated to plaintiff that "he could not pull a cup out of his rectum." *Id.* at 9. On October 24, 2017, plaintiff was relocated to 4 Southwest Cell 4, where the sink was "full of vomit," and "a half hour later" plaintiff was moved to Cell 5, and "the sink in Cell Five was full of rotten food and no running water." *Id.*

On November 16, 2017, while plaintiff was in 4 Southeast, "the inmate in Cell three named Wright splashed urine and water in my cell. When the plaintiff told staff about what occurred, they played dumb or acted like they were blind." *Id.* The next day, an "inmate worker spit on plaintiffs [sic] tray and handed the spit on the tray to the plaintiff (a gang member named Ruiz)." *Id.* On November 18, 2017, "inmate Wright (also a gang member) punched the plaintiff in the face and spit in the plaintiffs [sic] face." *Id.* On November 23, 2017, "inmate worker

named Burgess did not feed the plaintiff but Jane Doe Supervisor removed the plaintiff for assaultive behavior "splashing." *Id.* at 9-10.  On December 1, 2017, "the plaintiff met with Internal Affairs after over ten attempts to contact them." *Id.* at 10.

    3. Conduct of Defense Attorneys and Prosecutors

In January 2018, plaintiff was indicted on what he claims was based upon a "forged or bogus signature that the John Doe Detective falsely produced." *Id.* at 6.  Plaintiff alleges that on January 16, 2018, he handed his defense attorney Steven Kessner paperwork to investigate an incident that occurred at the Southampton Hospital on January 2016.  *Id.*  Plaintiff seeks to sue defendant Kessner because the paperwork was "misplaced or stolen," and "crucial evidence was enclosed in that envelope." *Id.*

From January 2018 to June 2018, Legal Aid attorney Jeremy Mis represented plaintiff. *Id.*  Plaintiff alleges in conclusory fashion that defendant Mis "was not working in the plaintiffs [sic] favor and was working to aid the prosecution like several other public defenders in Suffolk County who are currently under investigation." *Id.*  The allegations are based upon conversations plaintiff had with defendant Mis where "plaintiff met with Jeremy Mis inside S.C.C.F. and the plaintiff noticed language that confirmed conspiracy between this individual and the prosecution." *Id.*

Plaintiff then "fired" defendant Mis. *Id.* at 7.  Thereafter, defense attorney Christopher Gide was assigned to plaintiff's case. *Id.* at 6-7.  Plaintiff alleges as follows:

> On August 22nd 2018 at court, the plaintiff asked Christopher Gide to raise a 330.50 defense and Christopher Gide replied by saying [verbatim], "What is a 330.50." The plaintiff then realized that Christopher Gide was not working in the plaintiffs [sic] best defense.  Christopher Gide is a former district attorney that is aware of the law in every scope.  On that same day, Christopher Gide also lied to the plaintiff to accept a plea bargain of course to aid the prosecutors.

4

*Id.* at 7.[2]

Plaintiff also seeks to sue a Jane Doe Prosecutor who misrepresented that plaintiff was a "prior felony offender," because, plaintiff alleges, he had only two prior misdemeanor convictions. *Id.*

4. Second Period of incarceration in SCCF from December 15, 2017 to November 1, 2018

Plaintiff also challenges the conditions of confinement during his second period of incarceration at SCCF from December 15, 2017 to November 1, 2018. *Id.* Plaintiff intends to prove that during this time period, he was removed to the Behavioral Modification Housing Unit ("BMHU")[3] because "these security people are either conspiring against him or just being cruel intentionally because of his success as a rap artist." *Id.*

As plaintiff describes, on "Sunday May 6th 2018 inmate Brown threw urine and did not pass the plaintiff his breakfast. A openly gay 'John Doe' correctional officer played along with Inmate Brown and threatened the plaintiff with disciplinary infractions after being attacked, not fed and splashed with urine. Later that same day the plaintiff requested to be relocated immediately for safety issues. Supervisors did not remove the plaintiff or the inmate that was throwing urine." *Id.* at 11.

On May 16, 17, or 18, 2018, plaintiff received poor responses from Internal Affairs, which serves as "proof that Internal Affairs works to cover up security workers [sic] misconduct." *Id.*

---

[2] New York Criminal Procedural Law § 330.50 governs motions to set aside the verdict. N.Y. C.P.L. § 330.50.
[3] The BHMU is generally known as a "disciplinary area" of the SCCF. *Houston v. Cotter*, No. 07-CV-3256 (JFB)(AYS), 2016 WL 1253391, at *2 (E.D.N.Y. Mar. 30, 2016).

On May 25, 2018, plaintiff spoke with a John Doe corrections officer "about transsexual pornography and beliefs of Caucasians having homosexual origins," and which officer plaintiff alleges "has a sick obsession with the plaintiff." *Id.* at 10.  Plaintiff then alleges that "on the morning of September 21, 2018 during a body search after the plaintiff left a secure area, 'John Doe' officer placed hands on plaintiffs [sic] butt and butt crack area as if trying to put her[4] fingers in the plaintiffs butt." *Id.*

Plaintiff asserts that on June 1, 2018, plaintiff was "playing" with another inmate Trinidad where plaintiff and that inmate were throwing food at each other.  *Id.* at 11.  Plaintiff was subsequently moved to another cell, and plaintiff "intends to prove that this was all done on purpose.  Security people along with inmate Trinidad conspired to hurt the plaintiff in any way possible." *Id.*

On June 3, 2018, plaintiff contends that inmate Trinidad "threw a cup of unknown liquid (either urine or sperm mixed with other liquids) at the plaintiff and did not feed the plaintiff." *Id.* Plaintiff was then relocated to the BMHU.  *Id.*  Plaintiff claims that because he was moved to the BMHU through no fault of his own proves "the plaintiff has been/was targeted for several reasons." *Id.*

On August 18, 2018 at BMHU, plaintiff alleges that corrections officers allowed "homosexual inmate name Lois Garcia . . . to throw a Styrofoam cup with sperm at my cell and in my cell." *Id.* at 13.  Plaintiff intends to prove that "homosexual corrupt officers allowed this inmate to violate his constitutional rights because of his Indian heritage or overall success in the entertainment industry . . . ." *Id.*  Plaintiff also describes how "inmate Lois Garcia multiple times that inmate spit on plaintiffs cell door daily, meaning in front of the officers 3 or 4 times that

---

[4] It is unclear whether plaintiff alleges that this corrections officer is male or female.

6

inmate threw cups of liquid at plaintiffs cell door. . . ." *Id.* Plaintiff notes that "homosexuals throwing sperm is a very illegal and very satanic attempt to destroy plaintiffs [sic] confidence." *Id.*

On August 22, 2018, "inmate Lois Garcia threw feces in my cell (Cell One B.M.H.U.) and 'John Doe' officer did not provide cleaning supplies causing the plaintiff to use toilet water to create flow to push excrements out of the cell. Plaintiff was then approached by a supervisor that called a [sic] extraction team for no reason or to make an attempt to hurt the plaintiff." *Id.* at 14. While plaintiff was being escorted to the first floor in the elevator, plaintiff alleges that he was "pushed (head first in 4 point restraints) into metallic wires, had hair pulled, leg bent, and unidentified homosexual punched the plaintiff on his buttocks near his rectum." *Id.*

On September 4, 2018, a "bald head 'John Doe' officer allowed inmate Lois Garcia to breach security and throw feces under cell door around 10:45 P.M. . . ." *Id.* During the second week of September, a John Doe supervisor "cut off plaintiffs water for asking about a meal discrepancy." *Id.*

On October 4, 2018, "a openly gay 'John Doe Officer' placed the plaintiffs food inside the instrument used to feed inmates in the B.M.H.U. and then lied. *Id.* On October 5, 2018, "a corrections officer stole the plaintiff's legal paperwork illegally that was connected to security workers administrative superiors involving civil actions regarding plaintiffs constitutional rights proof of retaliation for filing lawsuit against S.C.C.F." *Id.*

Plaintiff claims that he sent "over forty letters to family," but when he asked his family members on the telephone if they received the letters, they "would say they never got my letters [,] multiple family members." *Id.* at 15.

7

## LEGAL STANDARD

As Judge Bianco summarized,

> A district court is required to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii). The Court is required to dismiss the action as soon as it makes such a determination. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii).
>
> It is axiomatic that district courts are required to read *pro se* complaints liberally, *see Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, (1976)); *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010), and to construe them "'to raise the strongest arguments that [they] suggest [ ].'" *Chavis,* 618 F.3d at 170 (quoting *Harris v. City of New York,* 607 F.3d 18, 24 (2d Cir. 2010)). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 123 (2d Cir.2010), *aff'd,* —— U.S. ——, 133 S. Ct. 1659, 185 L.Ed.2d 671 (2013) (citing *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 678 (citation omitted).
>
> Notwithstanding a plaintiff's *pro se* status, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.; accord Wilson v. Merrill Lynch & Co.,* 671 F.3d 120, 128 (2d Cir. 2011). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly,* 550 U.S. at 555 (internal quotation marks and citation omitted).

*Patrick v. Bronx Care*, No. 14-CV-7392 (JFB)(AKT), 2014 WL 7476972, at *1–2 (E.D.N.Y. Dec. 31, 2014).

The Second Circuit has held that "[d]istrict courts should generally not dismiss a pro se complaint without permitting at least one opportunity to amend, but granting leave to amend is not necessary when it would be futile." *Lamb v. Cuomo*, 698 F. App'x 1, 2 (2d Cir.

8

2017) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)); *see also Shipman v. Charles Schwab & Co.*, No. 14-CV-4568 (ENV)(LB), 2016 WL 11472831, at *7 (E.D.N.Y. Aug. 11, 2016) (citing *O'Neil v. Ponzi*, 394 F. App'x 795, 796-97 (2d Cir. 2010)) ("the court need not grant leave to amend 'where the substance of the claim pleaded is frivolous on its face.'"). A claim is frivolous "where it lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)); *see also Lamb*, 698 F. App'x at 2 (citing *Neitzke*, 490 U.S. at 325).

## DISCUSSION

Plaintiff's amended complaint fails to give fair notice to the Court, let alone defendants named here, as to specific legal violations for which he seeks redress. Instead, it contains a full page listing entire titles of state law (e.g., "Title G – Anticipatory Offenses"), and over a dozen federal constitutional rights (e.g., "Religious Practices, First Amendment"). Based on a review of the amended complaint, the Court will construe Plaintiff's action challenging the deprivation of his constitutional rights pursuant to 42 U.S.C. § 1983.

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 statute "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To maintain a Section 1983 action, a plaintiff must show that the defendant (1) acted under color of state law (2) to deprive the plaintiff of a right arising under the

9

Constitution or federal law. *Id.* For the reasons set forth below, the most of Plaintiff's allegations fail to state a claim under Section 1983.

1. Favorable Termination Doctrine

To the extent plaintiff attempts to set forth a claim emanating from the propriety of his conviction, said claim is barred by the "favorable termination doctrine." In *Heck v. Humphrey*, the Supreme Court held,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. 477, 486-87 (1994). The Court applied its holding to a case where petitioner, who was convicted of voluntary manslaughter in Indiana, named as defendants prosecutors and investigators, alleging that respondents, "acting under color of state law, had engaged in an 'unlawful, unreasonable, and arbitrary investigation' leading to petitioner's arrest: 'knowingly destroyed' evidence 'which was exculpatory in nature and could have proved [petitioner's] innocence; and caused 'an illegal and unlawful voice identification procedure' to be used at petitioner's trial." *Id.* at 479. The Court held that because the "damages claims challenged the legality of the conviction, [the Supreme Court] find[s] that the dismissal of the action was correct." *Id.* at 490.

In *Peay v. Ajello*, plaintiff sued under 42 U.S.C. § 1983, claiming that the prosecutor and defense attorney had "conspired to deprive him of his constitutional rights by fabricating evidence used at trial, withholding exculpatory evidence, suborning perjury, and attempting to intimidate him into accepting a guilty plea . . . ." 470 F.3d 65, 67 (2d Cir. 2006). The Second

10

Circuit held plaintiff's claims against the prosecutors and defense attorney were properly dismissed under *Heck* "inasmuch as plaintiff has not shown that his conviction has been reversed or declared invalid." *Id.* at 68-69.  The Second Circuit further held in *Warren v. Fischl* that under 28 U.S.C. § 1915(e), dismissal was appropriate under *Heck* because success on plaintiff's claims against Nassau County police officers and prosecutors "'would necessarily invalidate' [plaintiff's] convictions on the counts that had not been reversed or vacated." 674 F. App'x 71, 73 (2d Cir. 2017).

Here, plaintiff's claims against the John Doe Detective who interviewed him at Stony Brook Hospital in August 2017, defense attorneys Jeremy Mis and Christopher Gide for an alleged conspiracy between these individuals and the prosecution, John and Jane Doe prosecutors who were allegedly a part of the conspiracy, and the alleged "forged or bogus signature that the John Doe Detective falsely produced," as claims against these individuals do not involve convictions that have been reversed or vacated.  Therefore, these claims are dismissed for failure to state a claim for which relief may be granted.

2. Claims against Prosecutors and Defense Attorneys

In addition to the favorable termination doctrine, all claims against the prosecutors and former defense attorneys in the underlying criminal cases must be dismissed for additional reasons.

As to § 1983 claims against prosecutors, "'[u]nder federal law, prosecutors enjoy absolute immunity from liability in suits seeking monetary damages for acts carried out in their prosecutorial capacities, *i.e.*, those acts 'intimately associated with the judicial phase of the criminal process,' . . . 'but not for 'those aspects of the prosecutor's responsibility that cast him

11

in the role of an administrator or investigative officer rather than that of advocate.'" *Shorter v. Rice*, No. 12-CV-0111 (JFB)(ETB), 2012 WL 1340088, at *3 (E.D.N.Y. Apr. 10, 2012); *see Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006).

Moreover, a § 1983 claim against a defense attorney fails for lack of state action because "it is that neither public defenders, such as Legal Aid attorneys, nor court-appointed counsel, nor private attorneys, act under color of state law merely by virtue of their position." *Shorter*, 2012 WL 1340088, at *4.

In *Shorter v. Rice*, plaintiff brought § 1983 claims against prosecutors and his former defense attorney, alleging that the prosecutors incorrectly prosecuted his case as a felony and that his criminal defense attorney encouraged plaintiff to enter a plea of guilty to the incorrect felony charge. No. 12-CV-0111 (JFB)(ETB), 2012 WL 1340088, at *1 (E.D.N.Y. Apr. 10, 2012). Judge Bianco dismissed plaintiff's § 1983 claims against the prosecutor under the above-described immunity, and defense attorney for lack of state action. *Id.* at *3-4.

Here, as in *Shorter v. Rice*, plaintiff's § 1983 claims against prosecutors must fail because the allegations of their roles falls squarely in the acts "intimately associated with the judicial phase of the criminal process," and thus, they must be afforded prosecutorial immunity in this context. As to all of plaintiff's former defense attorneys, all claims against them must be dismissed for lack of state action.

3. Missing Medical Records

Plaintiff's claims against Dr. Troiano that he "stole/misplaced Stony Brook medical records for a femur fracture," does not rise to the level of a constitutional violation. Compl. 6.

As an initial matter, it is not clear what constitutional right this allegedly violated. The

12

Second Circuit has established that "something more than mere negligence" or "medical malpractice" is needed to establish § 1983 liability. *Charles v. Orange Cty.*, 925 F.3d 73, 87 (2d Cir. 2019); *see also Sanderson v. Buchanon*, 568 F. Supp. 2d 217, 219 (D. Conn. 2008) (citing *Smith v. Carpenter,* 316 F.3d 178, 184 (2d Cir.2003)). It is well established that "to state a cause of action under § 1983 for violations of the Eighth Amendment's Cruel and Unusual Punishment Clause, a prisoner must show that the state was deliberately indifferent to his or her medical needs." *Charles*, 925 F.3d at 85 (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). In an analogous context, "[d]istrict courts have generally declined to find that falsification of medical records alone gives rise to an independent Eighth Amendment claim under Section 1983." *Sherman v. Corcella*, No. 3:19-CV-1889 (CSH), 2020 WL 4043178, at *11 (D. Conn. July 16, 2020).

Here, plaintiff alleges in a conclusory fashion that "Dr. Troiano stole/misplaced Stony Brook medical records for a femur fracture," but fails to allege any connection with a deliberate indifference to plaintiff's medical needs. Therefore, plaintiff's claims against Dr. Troiano must be dismissed.

4. Verbal Abuse

Plaintiff's claims that several corrections officers called him "broken arrow" upon arrival at SCCF, and a corrections officer stating that "he could not pull a cup out of his rectum," do not rise to constitutional violations. "In this Circuit, allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged." *Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001); *see also Timm v. Faucher*, No. 3:16-CV-00531 (VAB), 2017 WL 1230846, at *5 (D. Conn. Mar. 31, 2017).

13

5. Lack of Personal Involvement

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (internal quotations marks omitted). "[B]ald assertions and conclusions of law" are insufficient to establish personal involvement. *See Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). A Section 1983 complaint that does not allege the personal involvement of a defendant therefore fails as a matter of law. *See, e.g.*, *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997); *Johnson v. Barney*, 360 F. App'x 199, 201 (2d Cir. 2010) (summary order). Moreover, an individual will not be held liable by virtue of his or her supervisory position alone. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). "[P]roof of 'linkage in the prison chain of command' is [similarly] insufficient." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)). Rather, a plaintiff must allege that each individual defendant (1) directly participated in the violation; (2) as a supervisory official, failed to remedy the violation after learning of it through a report or appeal; (3) as a supervisory official, created a policy or custom fostering the violation or allowing the policy or custom to continue after learning of it; or, (4) as a supervisory official, was grossly negligent in managing subordinates who caused the unlawful condition or event. *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986).

Plaintiff names as defendants Allen Riley, Thomas Loughren, Anthony Annucci, Errol Toulon Jr., Vincent DeMarco, Sergeant Dixon, unnamed Internal Affairs Investigators, unnamed security workers at SCCF, unnamed medical/mental health staff at SCCF, and unnamed Supervisors at SCCF. Plaintiff alleges no facts showing that these defendants had any direct involvement with, knowledge of, or responsibility for the alleged deprivation of his civil rights.

14

*Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013); *Farid*, 593 F.3d at 249; *Hernandez*, 341 F.3d at 144 ("[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior* . . . ." (citing *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)). Plaintiff's claims against these defendants are dismissed for failure to state a claim upon which relief may be granted.

6. Remaining Claims

Plaintiff's remaining claims appear sufficient to proceed at this juncture under § 1983.[5] These claims include as follows: Plaintiff alleges that he was in unsanitary conditions on October 24, 2017, and plaintiff's water supply was cut off for inquiring about a meal discrepancy on September 4, 2018. *See Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013) (discussing minimal sanitary conditions in prison). Allegations that John Doe corrections officers failed to protect plaintiff from other inmates on November 16-18, 2017, May 6, 2018, June 3, 2018, August 18, 2018, August 22, 2018, September 4, 2018, and October 4, 2018. *Barnes v. Cty. of Monroe*, 85 F. Supp. 3d 696, 728 (W.D.N.Y. 2015) ("The Eighth Amendment requires that prison officials take 'reasonable measure to guarantee the safety of inmates in their custody.'"). Plaintiff asserts that a corrections officer sexually abused him on September 21, 2018, and members of the extraction team physically assaulted him on August 22, 2018. *Martinez v. DeMarco*, No. 13CV1319KAMSMG, 2020 WL 2571978, at *3 (E.D.N.Y. May 21, 2020); *Colon v. Annucci*, 344 F. Supp. 3d 612, 642 (S.D.N.Y. 2018). Plaintiff complains that a corrections officer stole

---

[5] Many of these claims may well require exhaustion under the Prison Litigation Reform Act ("PLRA"). However, the Supreme Court has held, "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007).

plaintiff's legal paperwork, and plaintiff sent over forty outgoing letters to family who never received them. *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (prisoner can state a cause of action if prison officials "regularly and unjustifiably interfered" with incoming mail, and holding that "as few as two incidents of mail tampering could constitute an actionable violation. . .").

7. Caution

The amended complaint is replete with hate speech that serves no litigation purpose other than to harass and disparage. *See, e.g.*, Compl. 6 ("[t]he plaintiff drew a great deal of attention to himself by calling openly gay and 'closet homosexuals mooks & bozos out loud and directly to their faces"); *id.* at 8 ("racial profiling homosexual corrections officers called [him] 'broken arrow'"; *id.* at 13 ("homosexual inmate name Lois Garcia . . . to throw a Styrofoam cup with sperm at my cell and in my cell"); *id.* at 13 (plaintiff intends to prove that "homosexual corrupt officers allowed this inmate to violate his constitutional rights"). While such language arguably requires dismissal of the complaint as malicious under 28 U.S.C. §§ 1915(e)(2)(B)(i), *see Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) (holding a complaint is malicious when the purpose of the complaint "was not to rectify any cognizable harm, but only to harass and disparage"), the Court declines to do so in light of the allegations in the complaint, and the plaintiff's *pro se* status. However, plaintiff is expressly cautioned that any future use of such hate speech will result in dismissal of the complaint.

16

## CONCLUSION

Based on the foregoing, the complaint, filed *in forma pauperis*, is dismissed in part without prejudice as to the defendants specified above. No summons shall issue against these defendants. The complaint shall proceed against John Doe corrections officers involved in the remaining claims section of this Memorandum and Order.

The United States Marshals Service will not, however, be able to serve the John Doe defendants without further identifying information. In *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (*per curiam*), the Second Circuit held that a *pro se* litigant is entitled to assistance from the district court in identifying defendants. Accordingly, the court hereby requests that the Suffolk County Attorney ascertain the full names of the three unidentified Officers employed at SCCF and to provide the addresses where these defendants can currently be served within forty-five (45) days from the date of this order.

The Suffolk County Attorney need not undertake to defend or indemnify these individuals at this juncture. This order merely provides a means by which plaintiff may name and properly serve the defendant as instructed by the Second Circuit in *Valentin*. Once this information is provided, plaintiff's amended complaint shall be deemed further amended to reflect the full name and badge number of these officers, a summons shall issue, and the Court shall direct service on these defendants.

The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).  The Clerk of Court is respectfully directed to serve a copy of this order to the Suffolk County Attorney and to plaintiff at his address of record and note service on the docket.

**SO ORDERED.**

Dated: Central Islip, New York
      August 27, 2020

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge